[ECF No. 40]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MARIBEL MORA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NEW JERSEY OFFICE OF THE<br>PUBLIC DEFENDER,<br><br>　　　　　　Defendant. | Civil No. 23-1797 (CPO/EAP) |

## MEMORANDUM ORDER

This matter having come before the Court on Plaintiff's Motion to Compel Discovery of Employee Communications, ECF No. 68 ("Pl's Mot."); and Defendant having opposed the motion, ECF No. 80 ("Def.'s Opp."); and the Court having conducted an *in camera* review of the unredacted employee communications; and the Court deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1; and for good cause shown, the Court finds the following:

**A.    Factual Background**

*Facts in the Complaint*

1.     According to the Complaint, Defendant New Jersey Office of the Public Defender hired Plaintiff Maribel Mora as an employee in 2004. ECF No. 1, Complaint ¶ 7.

2.     During the COVID-19 pandemic, Defendant mandated that all of its employees provide proof of vaccination or submit to ongoing testing. *Id.* ¶ 15. In response, Plaintiff requested a religious exemption from both vaccination and testing. *Id.* ¶¶ 19-20. Plaintiff also stated that she was willing to comply with masking and social distancing. *Id.* ¶ 23. Nonetheless, on

December 7, 2021, Defendant placed Plaintiff on a seventy-five day unpaid suspension.  *Id.* ¶ 27.

3. On February 26, 2022, Plaintiff communicated to Defendant certain scriptures from the Christian Bible that she believed confirmed her convictions about COVID-19 vaccinations and testing.  *Id.* ¶¶ 29-30.  She also provided Defendant with a letter from her religious leadership indicating that her requests were tied to her faith as a Christian.  *Id.* ¶ 16.

4. According to Plaintiff, Defendant denied Plaintiff any accommodations for her religious beliefs as to its vaccination and testing policy and consequently, terminated Plaintiff's employment.  *Id.* ¶¶ 31-34.

5. On March 30, 2023, Plaintiff filed a Complaint alleging various discrimination, harassment, and retaliation claims under Title VII and the New Jersey Law Against Discrimination.  *Id.* ¶¶ 40-86 (Counts 1-4).

*Facts Pertinent to the Motion to Compel*

6. On March 6, 2023, just prior to the filing of this lawsuit, Plaintiff initially requested that Defendant complete an employment verification form for her New Jersey Private Detective license.  Pl.'s Mot. at 2.  According to Plaintiff, the initial form that Defendant prepared was incomplete.  During the course of this litigation, Plaintiff again requested that Defendant complete the employment verification form.  *Id.*  Plaintiff contends that Defendant did not complete the form until July 18, 2024.  *Id.*

7. Defendant, however, asserts that it completed Plaintiff's first request in March 2023, before Plaintiff filed this litigation.  Def.'s Opp. at 2.  In May 2024, Plaintiff's counsel emailed Defendant's counsel from Riker Danzig LLP ("Riker Danzig") requesting that it re-complete the New Jersey State Police Employment form.  *Id.* at 2-3; ECF No. 80-1, Certification of Fletcher C. Duddy ("Duddy Certif.") ¶ 2.  Due to the ongoing nature of the litigation, Defendant

sought and received legal advice from the Office of the Attorney General ("OAG"), the Division of Law ("DOL"), and Riker Danzig's counsel about the appropriate course of action. Duddy Certif. ¶ 2.

8. On December 6, 2024, following a discovery dispute conference, the Court ordered Defendant to prepare and produce a Rule 30(b)(6) witness on two topics: "(i) Defendant's actions regarding Plaintiff's application for her New Jersey private investigator license; and (ii) how Defendant reacted to/treated the last three applications for New Jersey private investigator licenses by Defendant's prior employees." ECF No. 59, Order ¶ 1(h).

9. On December 11, 2024, Plaintiff served Defendant with her Second Request for Discovery and Production of Documents, specifically requesting:

1) All documents related to Plaintiff's application for her New Jersey private investigator license (including but not limited to):

   a. All documents received by Defendant from Plaintiff regarding her private investigator license.

   b. All documents received by Defendant from any New Jersey State Police representative regarding Plaintiff from the date of her termination of employment to the present date (and any received later pursuant to ongoing discovery obligations).

   c. All documents in Defendant's possession from the date of Plaintiff's termination to present, including but not limited to:

      1. Internal memorandum between Defendant employees
      2. Emails between Defendant employees
      3. Emails between Defendant employees and New Jersey State Police representatives
      4. Emails, memos, and any record of communication between Defendant employees and prior counsel from the New Jersey Attorney General's Office on responding to Plaintiff's request.
      5. Any communication with current employees and former employees regarding Plaintiff's NJ private investigator

>    license.
>
>    d. Name all Defendant employees responsible for responding to Plaintiff's request for a NJ Private investigator license from the date of Plaintiff's termination to present and indicate any personnel or responsibility changes during that time.

Pl.'s Mot. at 2-3.

10. Plaintiff contends that Defendant responded with redacted communications and an accompanying privilege log. Pl.'s Mot. at 3 & Exs. A, B. Of the fourteen instances of redactions, Plaintiff challenges ten of them as improperly based on the attorney-client privilege, claiming that the communications did not involve Defendant's attorneys as senders or recipients. Pl.'s Mot. at 3. Defendant counters that the information Plaintiff seeks constitutes legal advice related to its handling—in the midst of this litigation—of Plaintiff's second request to Defendant to complete the New Jersey State Police's Employment form in connection with her private investigator license application. Def.'s Opp. at 2.

**B.   Discussion**

11. All evidentiary privileges asserted in federal court are governed by Federal Rule of Evidence 501, which provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - The United States Constitution;
>
> - A federal statute; or
>
> - Rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which the state law supplies the rule of decision.

Fed. R. Evid. 501. Where, as here, the action involves federal claims, federal common law

controls. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).

      12.     The elements of the attorney-client privilege include:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Maldonado v. N.J. ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 127 (D.N.J. 2004) (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)); *see also Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 117 (D.N.J. 2002) (same). The party claiming the privilege bears the burden of demonstrating its applicability. *Poe v. Driver Hist. Sales Corp.*, No. 20-14586, 2022 WL 2235880, at *2 (D.N.J. June 22, 2022) (citation omitted).

      13.     "The privilege also extends to corporations and protects 'communications between an attorney and the corporation's employees, including lower level employees . . . where doing so would give effect to the purposes of the privilege.'" *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 217 (D.N.J. 2023) (quoting *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990)); *see also In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) ("In the corporate context, the privilege applies when a corporate employee, acting at the direction of his corporate superiors, seeks legal advice from or provides information to in-house counsel and the other criteria for privilege are met.") (citations omitted). "Otherwise, in-house counsel would be wary of engaging in a candid exchange to alter business decisions that may run afoul of the law." *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 212 (E.D. Pa. 2008) (citing *Upjohn v. United States*, 449 U.S. 383, 391 (1981)).

14. "Notably, "[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)).  When the client is a corporation, "'privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys.'" *Se. Pa. Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) (quoting *SmithKline*, 232 F.R.D. at 477); *see also Doe v. Princeton Univ.*, No. 20-4352, 2025 WL 388832, at *3 (D.N.J. Feb. 4, 2025) ("[T]he protections of the privilege are not lost if legal advice is shared between non-attorneys to relay the advice."); *Columbus Life Ins. Co.*, 344 F.R.D. at 220-21 (finding under federal common law attorney-client privilege that sharing of legal advice by corporation to lower level employees was in furtherance of conducting due diligence and assessing legal risk).

15. Here, Plaintiff contends that the requested communications occurred among six employees:  Dana Lane, Esq, Defendant's Equal Employment Opportunity/Affirmative Action Officer; Michael Rutherford, Employee Relations Coordinator; Robin Veasy, Esq., Defendant's First Assistant Public Defender and ADA Coordinator; Fletcher C. Duddy, Esq., Defendant's Assistant Public Defender; William Wander, Defendant's Human Resources Director; and Cely Mack, Defendant's Human Resources Manager. Pl.'s Mot. at 4.  Plaintiff claims that because these individuals were not sharing documents or emails from their attorneys, but rather only "facts of what transpired after Plaintiff's requests to have Defendant verify her prior employment with them for her private detective license and the consequences of their actions," the communications are not covered by the attorney-client privilege. *Id.*

16.     The Court disagrees and finds that Defendant provides adequate substantiation for its redaction of the documents on the basis of attorney-client privilege. For context, the Office of the Attorney General of New Jersey ("OAG") "serves as the state's chief lawyer, providing legal representation to the Office of the governor and the state's departments, boards, and agencies." *See* https://www.njoag.gov/about/ (last visited May 22, 2025), *archived at* https://perma.cc/5MAW-VKF2. "The Attorney General carries out this responsibility through the Division of Law (DOL), which assigns its attorneys to represent various state entities." *Id.* "'In New Jersey, state agencies are not permitted to employ their own in-house counsel, except where explicitly permitted by law, and so DOL serves as the 'sole legal adviser' for most departments.'" *Id.* In addition, the DOL can retain private law firms to serve as "Special Counsel" to a State defendant. *See* https://www.njoag.gov/about/divisions-and-offices/division-of-law-home/outside-counsel/ (last visited May 22, 2025), *archived at* https://perma.cc/JYZ9-MTJL.

17.     Here, the OAG/DOL entered its appearance as counsel for Defendant in April 2023, ECF No. 4, and the DOL subsequently retained Riker Danzig as Special Counsel, who substituted as counsel on the docket. ECF No. 20; Duddy Certif. ¶ 3. OAG and DOL attorneys, however, continued working with both Special Counsel and the OPD's Legal Specialists to coordinate the litigation. Duddy Certif. ¶ 3. These OPD internal Legal Specialists included attorneys Dana Lane and Fletcher Duddy. *Id.* ¶ 4.

18.     Mr. Duddy certifies that he and Ms. Lane "conveyed in confidence the OPD's counsel's legal advice relating to the OPD's response to [P]laintiff's second request concerning the NJSP's Employment form to the relevant OPD personnel (and only to such personnel) who were involved in recompleting the form[,]" including William Wander and Cely Mack. *Id.* ¶ 5. Mr. Duddy explains that OPD's litigation control group included Ms. Lane, Mr. Wander, Ms.

7

Mack, Lauren Michaels (OPD's Director of People and Culture), and Mr. Duddy. *Id.* ¶ 6. This group had "significant input into the OPD's legal decisions concerning its responses to [P]laintiff's Rule 30(b)(6) deposition notice and second request concerning her NJSP Employment form." *Id.* ¶ 7.

19.     The May and July 2024 emails at issue involve these precise individuals: Lane, Wander, Duddy, Michaels, and Mack, as well as attorneys from OAG (Peter Draper and Sebastian Goldstein) and counsel from Riker Danzig (Opeyemi Akinde, Edwin Chociey, and Siobhan Neary). *See* Pl.'s Mot. at Ex. A (redacted emails). The emails were not withheld in their entirety but rather, as noted by Defendant, were produced with redactions of only specific attorney-client privileged information. *See* ECF No. 68 at PageID Nos.: 219, 221, 233, 234, 236-38, 239, 242, and 246-47 (redacted emails). The senders and recipients of these emails were all part of OPD's litigation control group and were engaged in discussions of inside and outside counsel's advice concerning the legally-appropriate response to Plaintiff's form request. Indeed, all of the emails share the subject line "Mora v. New Jersey Office of the Public Defender (Civil Action No. 23-1797-CPO-EAP)[.]"

20.     At the Court's request, Defendant submitted the unredacted emails for *in camera* review. The Court's review confirms that the redacted communications are privileged.

21.     Based on this record, the Court finds that the emails constitute communications between Defendant and its legal counsel—whether part of its internal litigation group or employed as Special Counsel—made during the course of litigation, for the purpose of securing a legal opinion regarding the appropriate course of action in response to Plaintiff's request for completion of the NJSP Employment form. If the privilege did not apply to such communication between employees and in-house counsel, it would limit the efforts of corporate counsel to ensure

8

compliance with the law and to protect OPD's legal interests during the course of the litigation.[1] *Upjohn*, 449 U.S. at 392.

22.  The only redactions to which this analysis does not apply concerns two redactions in the emails that list Mr. Duddy's State-issued cell phone number.  ECF No. 68, at PageID Nos. 242, 247 (duplicate), 254 (emails).  Mr. Duddy certifies that he does not publicize his State-issued cell phone number; it is not available on the OPD's website; and he has disclosed it only to a select group of OPD colleagues, the Special Counsel with whom he works, and a "very small" number of clients.  Duddy Certif. ¶ 8.  Moreover, Defendant argues that Mr. Duddy's cell phone number "is not relevant to the claims and defenses in this lawsuit, and its discovery by plaintiff is not proportional to the needs of this case[.]"  Def.'s Opp. at 18.  Defendant claims to possess "a great interest in the privacy of the cell phone number of a Civil Liaison such as Mr. Duddy."  *Id.* at 19.

23.  Plaintiff does not address these particular redactions, does not claim to need this information for any purposes related to this case, and does not provide any suggestion that Mr. Duddy's interest in preserving the phone number's confidentiality is outweighed by the needs of the case.  Absent some articulation by Plaintiff as to why Mr. Duddy's private cell phone number should not be redacted, the Court declines to order that the redaction be removed; therefore,

---

[1] Plaintiff also contends that what the emails were sharing were "the facts of what happened, the motivations behind those facts, and the potential consequences that flow from those facts and motivations." Pl.'s Br. at 5. While Plaintiff is correct that the attorney-client privilege protects only attorney-client communications, and that the facts underlying the communication are not subject to any protection, *see Upjohn*, 449 U.S. at 395, Plaintiff cites no support for its contention that the emails involved only facts. Indeed, Defendant provides a certification that the emails at issue involved legal advice relating to Plaintiff's NJSP Employment form to the OPD. *See* Duddy Certif. ¶¶ 6-7. Moreover, the Court's *in camera* review of the unredacted emails in question reveals that they related to the legal implications of Defendant's completion of the NJSP Employment form on Plaintiff's behalf.

**IT IS** this **23rd** day of **May 2025**,

**ORDERED** that Plaintiff's Motion to Compel, ECF No. 68, is **DENIED**.

                                                s/Elizabeth A. Pascal
                                                ELIZABETH A. PASCAL
                                                United States Magistrate Judge

cc:  Hon. Christine P. O'Hearn, U.S.D.J.